# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. CR406-082 |
| ) | |
| ROBERT ENGLE, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Defendant has filed a motion to suppress evidence recovered from his residence during the execution of a search warrant issued by this Court. Doc. 14. For the following reasons, this motion should be DENIED.

## I.  BACKGROUND

On January 31, 2006, Special Agent Lee Hoover of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) appeared before the Court and presented an application for a warrant to search defendant's residence at 807 Betz Creek Road in Savannah, Georgia for an unregistered, fully automatic AK-47 machinegun.  This application was supported by a

sworn affidavit[1] which set forth the basis for the agent's belief that defendant had this weapon in his residence. According to the affidavit, on December 27, 2005, Agent Hoover received information that defendant was in possession of and trying to sell an unregistered machinegun. Doc. 14, Ex. A. Later that day, ATF Special Agent Louis Valoze contacted a private citizen, who informed Valoze that defendant had offered to sell him/her a fully automatic AK-47 with Chinese markings for $2,500. Id. On January 30, 2006, a second private citizen contacted Valoze and informed him that defendant still had the machinegun for sale and that defendant had attempted to sell the weapon to him/her at the Islander Bar on Wilmington Island, Savannah, Georgia. Id. Valoze then contacted a third citizen, who stated that he/she had full access to defendant's residence and had personally seen the machinegun under a green couch in the residence. Id. On the basis of this affidavit, the Court issued a search warrant on January 31, 2006. Federal agents executed the warrant that same day and recovered the illegal machinegun as described in the affidavit from defendant's

---

[1] Although defendant argues that the affidavit does not contain a jurat or a signature indicating it was made under oath, the government correctly points out that the application for the search warrant was sworn to and subscribed in the presence of the Court and that the affidavit was explicitly incorporated with the application. The original warrant and supporting affidavit are on file with the Court.

residence.

**II.   ANALYSIS**

The Supreme Court has held that a search warrant should issue where the affidavit supporting the application for the search warrant establishes that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); see also United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999).  A court must consider the totality of the evidence in determining whether probable cause exists to justify the issuance of a search warrant, and that determination turns on the "assessment of probabilities in particular factual contexts[.]" Gates, 462 U.S. at 232.  The evidence "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." Id.

The Hoover affidavit demonstrates that ATF agents had contact with three separate "cooperating private citizens" between December 27, 2005 and January 31, 2006 regarding defendant's alleged possession of the AK-47 machinegun.  After initially receiving information that defendant had an

3

unregistered automatic machinegun, Agent Valoze contacted the first citizen informant, who stated that defendant had attempted to sell the weapon to him/her. A month later, a second informant contacted Agent Valoze and told him that defendant had attempted to sell the weapon to him/her. After receiving this information, Valoze contacted a third individual, who stated that he/she had actually seen the weapon in defendant's home underneath a green couch.

"Informant's tips doubtless come in many shapes and sizes from many different types of persons," and "[r]igid legal rules are ill-suited to such an area of diversity." Gates, 462 U.S. at 232. The Court, therefore, must consider the totality of the circumstances in evaluating whether a particular tip provides probable cause to support a search, rather than demand "that specific 'tests' be satisfied by every informant's tip." Id. at 230-31. Defendant asserts that "the search warrant affidavit is based entirely upon information allegedly received from three anonymous tipsters" and that since none of the informants are identified, the information provided in the affidavit lacks reliability and cannot establish the probable cause needed to support a search warrant. Doc. 14. The search warrant affidavit, however,

indicates that Valoze himself contacted two of the three informants, thereby ruling out the notion that these informants were simply "anonymous tipsters." Furthermore, it is reasonable to infer that since Valoze initiated contact with two of the informants, he suspected these citizens of having information related to his investigation before he sought their cooperation.

Contrary to defendant's assertion, the fact that the identity of each "cooperating citizen" was withheld does not detract from the reliability of the information in the affidavit sufficient to undermine the search warrant. When the identity of the informant is known, his reputation may be assessed by law enforcement officials and the informant can be held responsible if his allegations turn out to be fabricated. Florida v. J.L., 529 U.S. 266, 270 (2000). Law enforcement officials frequently refuse to reveal the identity of an informant, particularly for the informant's personal safety, and the courts properly rely on such statements in issuing a search warrant. Moreover, an "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [the confidential informant's] tip to greater weight than might

otherwise be the case." Gates, 462 U.S. at 234.

In the instant case, two citizen informants told Agent Valonze that defendant had offered to sell them a machinegun. Furthermore, Agent Valonze spoke with a third citizen informant who reported having personally seen the weapon under a green couch in defendant's home. Such specific, detailed statements reveal information about the characteristics of the weapon and its location within defendant's home that only one with personal knowledge would be able to provide. These very similar and precise statements from three separate citizen informants strongly suggest that defendant was engaged in wrongdoing and provide the probable cause required for the issuance of a search warrant. Probable cause may be based on "reasonably trustworthy information." Beck v. Ohio, 379 U.S. 89, 91 (1964). Defendant has shown no reason why Agents Hoover and Valoze were not reasonable in trusting the information provided by the "cooperating citizens" in this case or why this Court could not rely upon that information in assessing probable cause. Of course, the agent's affidavit would have been improved by an additional statement describing the informants' background, standing in the community, or past history of

providing reliable information so that the Court could make its own independent assessment of their credibility. But under the circumstances of this case, this deficiency is not so profound as to undermine the warrant's validity.

## III. CONCLUSION

Given the totality of the circumstances, and especially the consistency of the information furnished by the cooperating citizens, there was a "fair probability" that contraband or evidence of a crime would be found at defendant's residence. Gates, 462 U.S. at 238. It was entirely proper, therefore, for the Court to issue a warrant for the search of those premises. Defendant's motion to suppress should be DENIED.

**SO REPORTED AND RECOMMENDED** this 8Th day of June, **2006.**

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA